UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| RANDY HAMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:19-cv-00128-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| PLENNEY BARKDULL, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

***** ***** ***** *****

This matter is before the Court on three separate motions. Defendant Plenney Barkdull first filed a Motion to Dismiss [R. 7], which was followed shortly thereafter by Defendant Illinois Farmers Insurance Company's Motion for Judgment on the Pleadings. [R. 8.] Plaintiff Randy Hammons responded in opposition to these defense motions and also filed a Motion for Leave to Amend Complaint. [R. 12.] For the reasons set forth below, both Defendant Barkdull's Motion to Dismiss and Defendant Illinois Farmer's Motion for Judgment on the Pleadings are **GRANTED**, and, consistent with those holdings, Plaintiff's Motion for Leave to Amend Complaint is **DENIED**.

I

In March 2017, Plaintiff Randy Hammons was in a car accident with someone driving Defendant Plenney Barkdull's car in Laurel County, Kentucky. [R. 12-2 at 2.] Mr. Hammons, a Michigan resident, claims the driver of Mr. Barkdull's car negligently caused the accident; that unidentified individual, however, fled the scene. *Id.* In the aftermath of the accident, Mr.

1

Barkdull, an Indiana resident, denied operating the vehicle and disclaimed responsibility for whoever was driving the car. [*Id.*; R. 8-1 at 2.] Relying in part on Mr. Barkdull's representations, his insurance company, Defendant Farmers Insurance, ultimately denied Mr. Hammons' claim for bodily injury benefits. [R. 12-2 at 3.] Unable to recover from either Defendant, Mr. Hammons filed suit on April 18, 2019 in Laurel County state court. [R. 11 at 1; R. 7-1 at 1.] Farmers Insurance properly removed to this Court on May 23, 2019. [R. 12-2 at 2.]

## II

### A

The Court first turns to Mr. Hammons' Motion for Leave to Amend Complaint. [R. 12.] Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which provides that even if the party does not seek the amendment within the of-right period, a court may give leave to permit such an amendment and should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has read this provision broadly, and the Sixth Circuit has recognized that "where the underlying facts would support, a motion for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake, Inc.*, 195 F.3d 828 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

Each Defendant opposes Mr. Hammons' motion for leave to amend, arguing that the proposed amendment is futile as, like the original complaint, it does not plead sufficient facts to survive their respective dispositive motions. [*See* R. 15; R. 16.] Generally, a proposed amendment is futile either when it will not survive a motion to dismiss or when it will not

2

survive a motion for judgment on the pleadings. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Green v. Bank of Am. Corp.*, 530 F. App'x 426, 428 (6th Cir. 2013). As such, a motion for leave is properly denied "if the court concludes that the pleading as amended could not withstand a motion to dismiss" or a motion for judgment on the pleadings. *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 248 (6th Cir. 1986) (citation omitted); *Green*, 530 F. App'x at 428. So, here, in deciding whether to grant Mr. Hammons' leave to amend, the Court must necessarily determine whether the First Amended Complaint would survive Defendant Barkdull's Motion to Dismiss or Defendant Farmers Insurance's Motion for Judgment on the Pleadings.

**B**

**1**

A motion for judgment on the pleadings under Rule 12(c) and a motion to dismiss under Rule 12(b)(6) are reviewed under the same standards. *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). For purposes of both motions, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment as a matter of law." *Id.* (internal citations and quotations omitted). To avoid dismissal, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain "detailed factual allegations"; but the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

---

[1] Federal district courts "have consistently held that federal pleading requirements . . . and the *Twombly-Iqbal* standard apply to removed complaints." *Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 518 (E.D. Ky. 2015).

3

formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotations omitted). Relatedly, while a court must accept as true all well-pleaded factual allegations, the same is not true of legal conclusions. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citation omitted).

2

a

Mr. Hammons' First Amended Complaint includes two claims against Defendant Barkdull: Count II, a claim for negligent entrustment, and Count V, a claim for punitive damages. [R. 12-2 at 4, 6.] Noticeably absent, as compared to the original Complaint, is the fraud claim against Mr. Barkdull. [R. 1-2 at 2.] In light of the amendment, the arguments made in Mr. Barkdull's original motion to dismiss concerning the fraud claim are now moot. [R. 7-1 at 5.] That said, the Court still must address Mr. Barkdull's argument that the tort claims brought are barred by the applicable statute of limitations, KRS § 304.39-230(6). *Id.* at 3. Count I of the First Amended Complaint, a general claim of negligence, is made against Defendant "Unknown Driver," and also falls within the purview of the MVRA. [R. 12-2 at 3; *See Holland v. Lowe's Home Centers, Inc.*, 198 F.3d 245 (6th Cir. 1999).] Thus, analysis of the MVRA statute of limitations provision, KRS § 304.39-230(6), applies equally to Count I.

Under KRS § 304.39-230(6), tort claims must be filed "not later than two (2) years after the injury, or the death, or the date of issuance of the last basic or added reparation payment made by any reparation obligor, whichever later occurs." In this case, as Mr. Hammons is still alive and brought suit more than two years after the accident [R. 11 at 1], for his claims to fall within the applicable statute of limitations it must be by way of the latter avenue: a claim filed

4

two years within the date of issuance of the last basic or added reparation payment.[2] To this end, Mr. Hammons' Amended Complaint asserts that his insurance company, Allstate Fire and Casualty, last extended such payments on February 20, 2018. [R. 12-2 at 4.] If true, the lawsuit filed on April 18, 2019 would be timely, as the February 20, 2018 payment occurred approximately fourteen months before, well within the two-year window provided by the latter avenue of KRS § 304.39-230(6). *See Stull v. Steffen*, 374 S.W.3d 355, 357 (Ky. Ct. App. 2012).

In support of his motion to dismiss, Mr. Barkdull argues that this latter avenue is unavailable to Mr. Hammons. [*See* R. 14 at 1.] Mr. Barkdull points out that the February 2018 benefits paid to Mr. Hammons were made pursuant to Michigan's statutory scheme, not Kentucky's and, accordingly, fail to toll the statute of limitations. *Id.* at 2 ("[T]he Plaintiff in the present matter did not receive [personal injury protection] benefits under the structure set forth under Kentucky law . . .."). Mr. Hammons acknowledges that the benefits paid by Allstate were made pursuant to Michigan law, but argues that the payment still works to toll the statute of limitations, as set forth in KRS § 304.39-230(6). [R. 10 at 5.]

b

Mr. Hammons' tolling theory is unsupported by Kentucky case law and the applicable statutory provisions. To analyze Mr. Hammons' theory, the Court looks first to the statute itself. In doing so, the Court is mindful that Kentucky courts, when interpreting a statute, start with the language of the statute, giving the words their plain and ordinary meaning. *Stinson v. Com.*, 396 S.W.3d 900, 903 (Ky. 2013).

---

[2] "Basic reparation payments," as defined by Kentucky statute, serve to provide "reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle," and are limited to a maximum of $10,000 per payee. KRS § 304.39-020(2).

In the present case, both parties agree that KRS § 304.39-230(6), part of the Motor Vehicle Reparations Act (MVRA), KRS § 304.39-010, *et seq.*, provides the applicable statute of limitations. As a whole, the MVRA's primary purpose "is to benefit motor vehicle accident victims by reforming, and in some areas broadening, their ability to make and collect claims." *Crenshaw v. Weinberg*, 805 S.W.2d 129, 131 (Ky. 1991). To effectuate this purpose, the MVRA provides that "every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to" basic reparation payments, regardless of fault. *See State Farm Mut. Auto. Ins. Co. v. Adams*, 526 S.W.3d 63, 66 (Ky. 2017) (quoting KRS § 304.39-030(1)). As relevant here, the Kentucky legislature also "broadened" an individual's ability to make claims by extending the statute of limitations in relation to the date of last "basic reparation payment" made, if such a payment occurs. *Crenshaw*, 805 S.W.2d at 131. Here, no such payment has occurred.

As noted above, in relevant part, the statute of limitations section of the MVRA states as follows: "An action for tort liability . . . may be commenced not later than two (2) years after the injury, or the death, or the date of issuance of the last basic or added reparation payment *made by any reparation obligor*, whichever later occurs." KRS § 304.39-230(6) (emphasis added). Based on a plain reading of the provision then, to toll the statute of limitations under KRS § 304.39-230(6) the payment must be made by a reparation obligor. As used in this provision, "reparation obligor" is defined as "an insurer, self-insurer, or obligated government providing basic or added reparation benefits *under this subtitle.*" KRS § 304.39-020(13) (emphasis added). Accordingly, a plain interpretation of the statute leads to a conclusion that, where the basic

6

reparation benefits are provided under another state's statutory scheme, not Kentucky's MVRA, then the statute of limitations is not tolled.

The case law cited by Mr. Hammons does nothing to alter this straightforward interpretation. Mr. Hammons relies mainly on three cases in support of this theory that the Michigan payments constituted basic reparation benefits as defined by Kentucky's MVRA: *Stull v. Steffen*, 374 S.W.3d 355 (Ky. Ct. App. 2012), *Stephenson v. State Farm Ins. Co.*, 217 S.W.3d 878 (Ky. Ct. App. 2007), *Dairyland Ins. Co. v. Assigned Claims Plan*, 666 S.W.2d 746, 748 (Ky. 1984). However, these cases mainly address when insurers are required to pay basic reparation benefits under Kentucky law and how, when those payments are made, they are to be allocated or defined. *See, e.g.*, *Dairyland Ins.*, 666 S.W.2d at 748 ("[T]he statute . . . requires coverage by any insurer authorized to transact business in this Commonwealth, which insurance covers basic reparation benefits in all cases required by Subtitle 39 [the MVRA] . . . ."). While somewhat helpful, these cases are not controlling as to the present issue.

Here, it is not disputed that Allstate had an obligation to offer basic reparation benefits as part of the policy coverage. What is disputed is whether Mr. Hammons was ever provided these benefits such that the statute of limitations was tolled. None of the cases cited stand for the proposition that when an accident victim claims benefits under another state's similar statutory scheme, those benefits are then deemed as basic reparation benefits under Kentucky law. In sum, simply because Mr. Hammons could have claimed basic reparation benefits under Kentucky's statutory scheme, does not mean that the benefits he claimed under Michigan's statutory scheme are then somehow deemed basic reparation benefits for purposes of Kentucky law.

7

A brief review of relevant Kentucky case law supports the conclusion that the benefits claimed under Michigan law are not basic reparation benefits within the meaning of the MVRA and KRS § 304.39-230(6) specifically.  In *Lawson v. Helton Sanitation, Inc.*, 34 S.W.3d 52, 60–61 (Ky. 2000), the accident victim claimed that medical pay benefits received pursuant to Kentucky statute were "no-fault benefits" that operated to toll the MVRA statute of limitations. The Kentucky Supreme Court rejected this argument, holding as follows: "There is no such thing as a generic no-fault payment which tolls the two-year period of limitations for filing a tort action.  The only no-fault payment which tolls the period of limitations is a [basic reparation benefit] or ARB payment as those terms are defined in the MVRA." *Id.* at 61.  The *Lawson* court was explicitly clear that "pursuant to KRS [§] 304.39–230(6), the two-year statute of limitations is tolled only by payments of [basic reparation benefits] or ARB, *as defined within the MVRA.*" *Id.* (emphasis added).  Following *Lawson*, Kentucky courts have maintained this more narrow understanding of what tolls the MVRA statute of limitations.  *See Hampton v. Watkins*, No. 2012-CA-000005-MR, 2013 WL 375585, at *2 (Ky. Ct. App. Feb. 1, 2013) (denying an argument that the MVRA statute of limitations was tolled where, in his policy, the claimant was entitled to basic reparation benefits under Kentucky law but never claimed such benefits).

Mr. Hammons' tolling theory is unsupported by Kentucky case law and the applicable statutory provisions.  He has failed to show that the payments received pursuant to Michigan's statutory scheme operate to toll the MVRA statute of limitations, as provided under Kentucky law.  Mr. Hammons' negligence claims are therefore barred by the statute of limitations and Defendant Barkdull's Motion to Dismiss must be granted as to Count II, and as to the portions of

Count V that are dependent on the negligent entrustment claims in Count II. Additionally, as explained above, this statute of limitations finding applies equally to the negligence claim brought in Count I and, by extension, the portions of Count V that are dependent on Count I.

### 3

In line with the above findings, the only claims that now remain in Plaintiff's Amended Complaint are Counts III and IV, which claim that Defendant Farmers Insurance acted in bad faith, and the portions of Count V dependent on the bad faith claims. Thus, the Court now turns to Defendant Farmers Insurance's Motion for Judgment on the Pleadings, and related memoranda, which argue that Mr. Hammons has not alleged plausible facts to support a bad faith claim. [R. 8; R. 16.]

### a

The Court will first address Farmers Insurance's argument that the time-barred status of Mr. Hammons' negligence claims "also requires dismissal of the bad faith claim" against Farmers Insurance. [R. 16 at 10.] Specifically, Farmers Insurance argues such dismissal is required because "the bad faith claim depends upon Mr. Hammons proving that [Farmers Insurance] must satisfy the claim being made against Plenney Barkdull." *Id.* Broken down, the argument tracks as follows: the bad faith claims against Farmers Insurance depend on proof that its insured, Mr. Barkdull, was negligent; Mr. Hammons failed to bring the underlying negligence claims against Mr. Barkdull in time; Mr. Hammons now has no way to prove that Mr. Barkdull was negligent; as such, the bad faith claims necessarily fail. After review of the elements of a bad faith claim under Kentucky law and the relevant case law, the Court agrees.

To prevail on a third-party bad faith claim under Kentucky law, a plaintiff must show that: (1) the insurer was obligated to pay the claim under the terms of the policy; (2) the insurer lacked a reasonable basis in law or fact for denying the claim; and (3) the insurer knew there was no reasonable basis for denying the claim or acted with reckless disregard in denying the claim.[3] *See Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.*, 497 S.W.3d 733, 738 (Ky. 2016) (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)).  Farmers Insurance argues that, as the negligence claims are time-barred, Mr. Hammons cannot prove the first bad-faith element: that the insurer was obligated to pay the claim under the terms of the policy.

The case law supports Farmers Insurance's position.  Indeed, "[i]n Kentucky it has long been held that generally suits against insurance carriers cannot be maintained until after a judgment fixing liability against their insured has been entered." *Kentucky Hosp. Ass'n Tr. v. Chicago Ins. Co.*, 978 S.W.2d 754, 755 (Ky. Ct. App. 1998) (citation omitted).  Moreover, Kentucky courts have recently made clear that "[t]he same holds true in the context of third-party claims of bad faith. Only an *injured* third-party claimant may sue an insurer for violating UCSPA.  And, the existence of any actionable injury likewise depends upon the final resolution of another claim." *Watson v. United States Liab. Ins. Co.*, No. 2018-CA-000475-MR, 2019 WL 2236428, at *3 (Ky. Ct. App. May 24, 2019) (emphasis in original), *review granted* (Feb. 12, 2020).  In fact, the *Watson* court bluntly stated that "*a third-party claimant may only sue the insurance company under* [the] *UCSPA when coverage is not contested or already established*."

---

[3] Plaintiff's Amended Complaint technically brings two bad faith claims, under the common law and under the Kentucky Unfair Claims Settlement Practices Act (UCSPA), respectively.  The standards for these two varieties of bad faith claims are identical.  *See Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 527 (6th Cir. 2006).

*Id.* (emphasis in original) (citing *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 516 (Ky. 2006)). In the present case, coverage remains contested [*see* R. 8-1 at 9–11] and has not been otherwise established. Therefore, under the directives of *Watson*, which construes applicable Kentucky case law, it appears Mr. Hammons now has no basis to advance his bad faith claims against Farmers Insurance.

b

Before concluding, the non-binding nature of the *Watson* court's holding must be acknowledged in this context. It is well established that when applying state substantive law, as here, federal courts are to "follow the decisions of the state's highest court when that court has addressed the relevant issue." *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 762 (6th Cir.2008) (citation omitted). Intermediate state appellate courts' decisions, on the other hand, are viewed as "persuasive unless it is shown that the state's highest court would decide the issue differently." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). The Kentucky Supreme Court has not ruled as decisively on this issue as did the Kentucky Court of Appeals in *Watson*. Thus, *Watson* is to be viewed as persuasive law which aids in "anticipat[ing] how the relevant state's highest court would rule in the case." *Id.*

This established, further review of Kentucky Supreme Court decisions supports the *Watson* court's stance. As noted, the first element of a bad faith claim is that the insurer was obligated to pay the claim under the terms of the policy. *Hollaway*, 497 S.W.3d at 738. In *Knotts v. Zurich Ins. Co*, the Kentucky Supreme Court addressed the meaning of claim as used in the UCSPA. 197 S.W.3d at 515. The *Knotts* court explained that in this context "'claim,' . . . means an assertion of a right to renumeration under an insurance policy once liability has

11

reasonably been established." *Id.* at 516. The key language for present purposes is "once liability has reasonably been established." *Id.* The initial hurdle a claimant must clear is establishing liability—the obligation to pay. As explained in *Watson*, with no "judgment fixing liability against [Farmers Insurance]'s insured, nor an executed settlement resolving [the] claim," Mr. Hammons cannot clear this hurdle. 2019 WL 2236428, at *4. This, therefore, leads to the conclusion that Mr. Hammons thus has no way to prove the first element of a bad faith claim—that the insurer was obligated to pay the claim under the terms of the policy.

c

For the sake of completeness, given the still-developing nature of Kentucky case law on the above issue, the Court will also analyze the sufficiency of the pleadings. Specifically, the Court will analyze whether the First Amended Complaint pleads sufficient facts to state a plausible claim to relief. *Twombly*, 550 U.S. at 570. This analysis also counsels dismissal of the bad faith claims.

All three elements of the bad-faith test must be met for a plaintiff to prevail on a third-party claim. *Hollaway*, 497 S.W.3d at 738. Mr. Hammons' Amended Complaint most clearly fails to plead sufficient facts as it relates to the third element of the test—that the insurer knew there was no reasonable basis to reject the claim or acted with reckless disregard in denying the claim. To determine whether the third element has been met, Kentucky courts have looked for "malevolent intent" on behalf of the insurer. *Hollaway*, 497 S.W.3d at 739 ("[W]e are doubly sure [the insurer] does not meet the malevolent intent required under *Wittmer* to be susceptible for bad faith under Kentucky law."). This standard is an acknowledgment of the fact that "unless the underlying conduct is sufficient to warrant punitive damages," a bad faith claim is "non-

existent under [Kentucky] law." *Id.* To this point, Mr. Hammons' own briefing acknowledges that "[t]he Kentucky Supreme Court specifically describes the standard as that of 'outrageous' conduct by the insurer." [R. 11 at 5 (citing *Wittmer*, 864 S.W.2d at 890).] However, the allegations contained within the Amended Complaint itself cut against a finding that Farmers Insurance actions rose to the level of malevolent intent—either in the form of intentional misconduct or reckless disregard—as it concerns the rights of Mr. Hammons.

The Amended Complaint alleges the following[4] as it relates to Farmers Insurance's alleged punitive conduct:

> 33. Thereafter, the Defendant Farmers lackadaisically investigated the incident and rather than conduct a thorough examination of the issues involved by independent corroboration, took their insured at her [sic] word that the vehicle was stolen.
> 34. Defendant Farmers apparently acted only on the Defendant Barkdull's statement and, possibly, a stolen police report filed well after the incident.

[R. 12-2 at 7.] Taking the allegations in paragraphs 33 and 34 as true, Farmers Insurance's wrongdoing amounted to believing the representations of Mr. Barkdull and failing to investigate further when provided with a police report which supported Mr. Barkdull's statements. Even if Mr. Hammons could introduce evidence supporting these allegations, it would prove only that Farmers Insurance's conduct was in fact somewhat "lackadaisical," not that the conduct rose to the level of intentional misconduct or reckless disregard as to Mr. Hammons' rights. *Hollaway*, 497 S.W.3d at 739 ("Absent evidence of punitive conduct, an insurer is entitled to a directed verdict for any bad-faith claim levied against it."). On their face, none of these actions rise

---

[4] Other portions of the Amended Complaint also touch on the alleged actions which amounted to "reckless disregard" of Mr. Hammons' rights. [*See* R. 12-2 at ¶ 28.] However, as those portions are mostly stated in conclusory terms, *see id.* at ¶ 28 (iii), the excerpted portion sufficiently summarizes the relevant factual allegations as it relates to the third element.

13

anywhere close to the type of "malevolent intent" required by Kentucky law. Due both to the time-barred status of Mr. Hammons' underlying negligence claims and the failure to plead sufficient facts to state a claim, Farmers Insurance's Motion for Judgment on the Pleadings must be granted.

### III

The court system as a whole is a mechanism by which parties seek justice; however, parties must seek justice within the established parameters. In the present case, if Mr. Hammons' allegations as to the cause of the car accident and, notably, the subsequent obfuscation by the Barkdulls are true then it appears an unfortunate result that he cannot recover. Indeed, in many instances "[s]tatutes of limitation are arbitrary and unfair, but they represent a policy decision made by the legislative branch of government that after the passage of specified periods of time, claims are not viable." *Faris v. Stone*, 103 S.W.3d 1, 4 (Ky. 2003). This Court is unable to ignore the clear directives of the applicable statute of limitation, regardless the apparent "detriment inflicted upon [the] tardy litigant." *Id.*

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

    1.    Defendant Plenney Barkdull's Motion to Dismiss **[R. 7]** is **GRANTED**;

    2.    Defendant Illinois Farmers Insurance Company's Motion for Judgment on the Pleadings [**R. 8**] is **GRANTED**;

    3.    Plaintiff Randy Hammons' Motion to Amend Complaint [**R. 12**] is **DENIED**;

    4.    Plaintiff Randy Hammons' original and amended complaints [**R. 1-2; R. 12-2**] are **DISMISSED WITH PREJUDICE**; and

5. This case is **STRICKEN** from the Court's active docket.

This the 18th day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge